IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FEDERATION OF AMERICANS FOR CONSUMER CHOICE, INC.; JOHN LOWN d/b/a LOWN RETIREMENT PLANNING; DAVID MESSING; MILES FINANCIAL SERVICES, INC.; JON BELLMAN d/b/a BELLMAN FINANCIAL; GOLDEN AGE INSURANCE GROUP, LLC; PROVISION BROKERAGE, LLC; and V. ERIC COUCH, | § § § § § § § § § § | |
| *Plaintiffs,* | § § § | C.A. No. _____ |
| v. | § § | |
| UNITED STATES DEPARTMENT OF LABOR and MARTIN J. WALSH, in his official capacity as SECRETARY OF LABOR, | § § § § § | |
| *Defendants.* | § § | |

## COMPLAINT

Plaintiffs Federation of Americans for Consumer Choice, Inc. ("FACC"), John Lown d/b/a Lown Retirement Planning, David Messing, Miles Financial Services, Inc., Jon Bellman d/b/a Bellman Financial, Golden Age Insurance Group, LLC, ProVision Brokerage, LLC, and V. Eric Couch (collectively, "Plaintiffs"), for their Complaint against Defendants United States Department of Labor ("DOL") and Martin J. Walsh, in his official capacity as Secretary of the United States Department of Labor, allege as follows:

# I.  <u>INTRODUCTION</u>

1.      In 2016, the DOL promulgated a series of new rules and related "prohibited transaction exemptions" ("PTEs") that significantly reinterpreted and broadened who would be considered an "investment advice fiduciary" for purposes of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Internal Revenue Code ("Code"), 26 U.S.C. § 1, *et seq.* The stated purpose of these new rules and exemptions (collectively, the "Fiduciary Rule") was "to regulate in an entirely new way hundreds of thousands of financial service providers and insurance companies in the trillion dollar markets for ERISA plans and individual retirement accounts (IRAs)." *Chamber of Commerce. of United States of Am. v. United States Dep't of Labor*, 885 F.3d 360, 363 (5th Cir. 2018) (hereinafter, "*Chamber of Commerce*"). The Fiduciary Rule replaced the five-part test set forth in a rule adopted by the DOL in 1975, which had been in place for over four decades.

2.      In *Chamber of Commerce*, the United States Court of Appeals for the Fifth Circuit vacated the new Fiduciary Rule *in toto*. Specifically, the court held that the Fiduciary Rule significantly expanded and conflicted with the statutory definition of fiduciary in ERISA and the Code, and the DOL therefore lacked the authority to promulgate the Fiduciary Rule. *Id.* at 379. The court likewise held that the Fiduciary Rule was an unreasonable interpretation of the statutory text under *Chevron, USA, Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The court reasoned that, in using the term fiduciary in ERISA and the Code, Congress intended to incorporate the well-established meaning of that common-law term, which turns on the existence of a special

relationship of trust and confidence. *Chamber of Commerce*, 885 F.3d at 369-71. The court explained that the five-part test set out in the DOL's prior rule "captured the essence of a fiduciary relationship" as it was known at common law. *Id*. at 364-65.[1] The Fiduciary Rule, on the other hand, improperly encompassed sales conduct on the part of financial professionals and insurance agents that had historically never been considered as fiduciary in nature. *Id*. at 372-76.

3.      Undeterred by the Fifth Circuit's rebuke in *Chamber of Commerce*, the DOL has now sought to resurrect and repackage the substance of its vacated Fiduciary Rule through adoption of a new Prohibited Transaction Exemption, No. 2020-02 (the "Revised Exemption") on December 18, 2020. 85 Fed. Reg. 82798 *et seq*. (Dec. 18, 2020). Rather than proceed forthrightly as it did before, in promulgating the Revised Exemption the DOL purports to leave the 1975 five-part test for investment advice fiduciaries unchanged. However, the text of the Revised Exemption is accompanied by a 64-page preamble, much of which is devoted to the DOL's newly devised interpretation of who will be categorized as an investment advice fiduciary under the 1975 rule (the "New Interpretation"), which DOL explicitly proclaims to be its final interpretation in its release accompanying the Revised Exemption. This New Interpretation carries forward the core problem the Fifth Circuit identified in vacating the Fiduciary Rule the first time: DOL's impermissible effort to rewrite and expand the definition of a fiduciary under ERISA and the Code. Pouring the

---

[1] The 1975 rule provided that an investment advice fiduciary is one who: (1) "renders advice...or makes recommendation[s] as to the advisability of investing in, purchasing, or selling securities or other property;" (2) "on a regular basis;" (3) "pursuant to a mutual agreement...between such person and the plan;" and the advice (4) "serve[s] as a primary basis for investment decisions with respect to plan assets;" and (5) is "individualized ... based on the particular needs of the plan." 29 C.F.R. § 2510.3-21(c)(1).

same old wine into a new bottle does not change the result. The New Interpretation is inconsistent with the statutory provisions of ERISA and the Code and arbitrary and capricious. The Court should therefore vacate the New Interpretation in its entirety and enjoin the DOL from implementing or enforcing it in any manner.

## II.   PARTIES

4.     Plaintiff FACC is nonprofit corporation organized and existing under the laws of the State of Texas. FACC is a trade organization whose members are independent marketing organizations, insurance agents, and agencies that market fixed insurance products including traditional fixed rate annuities and fixed indexed annuities. The primary purpose of FACC is to ensure that regulation affecting the sale of fixed products is fair and even-handed so consumers can continue to benefit from guaranteed rates of return, lifetime income benefits, and other protective features offered by fixed insurance products which have become especially valuable to those near or reaching retirement during these economically challenging times.

5.     Plaintiff John Lown d/b/a Lown Retirement Planning ("Lown") is an independent retirement planning adviser residing in Dallas County, Texas. Lown is a licensed insurance agent in Texas, authorized to solicit the sale of, among other products, annuities. As part of the services he provides, Lown regularly advises clients regarding the purchase of annuity products in IRAs, including in connection with rollovers from 401ks and other employer benefit plans under ERISA.

6.     Plaintiff David Messing ("Messing") is an independent financial adviser residing in Collin County, Texas. Messing is a licensed insurance agent in Texas,

authorized to solicit the sale of, among other products, annuities. As part of the services he provides, Messing advises clients regarding the purchase of annuity products in IRAs, including in connection with rollovers from 401ks and other employer benefit plans under ERISA.

7.      Plaintiff Miles Financial Services, Inc. ("Miles") is a financial services firm with its principal place of business in Lubbock, Texas. Miles provides full-service insurance brokerage services through licensed insurance agents in Texas and other states, authorized to solicit the sale of, among other products, annuities. As part of the services it provides, Miles and its independent agents advise clients regarding the purchase of annuity products in IRAs, including in connection with rollovers from 401ks and other employer benefit plans under ERISA.

8.      Plaintiff Jon Bellman d/b/a Bellman Financial ("Bellman") is an independent insurance professional residing in Collin County, Texas. Bellman is a licensed insurance agent in Texas, authorized to solicit the sale of, among other products, annuities. As part of the services he provides, Bellman advises clients regarding the purchase of annuity products in IRAs, including in connection with rollovers from 401ks and other employer benefit plans under ERISA.

9.      Plaintiff Golden Age Insurance Group, LLC ("Golden Age") is an independent insurance agency with its principal place of business in El Paso County, Texas. Golden Age provides insurance brokerage services through licensed insurance agents in Texas, who are authorized to solicit the sale of, among other products, annuities. As part of the services it provides, Golden Age and its independent agents advise clients regarding

the purchase of annuity products in IRAs, including in connection with rollovers from 401ks and other employer benefit plans under ERISA.

10.     ProVision Brokerage, LLC ("ProVision") is an independent insurance marketing organization with its principal place of business in Denton County, Texas. V. Eric Couch ("Couch") is the sole member of ProVision and a licensed insurance agent residing in Denton County, Texas. ProVision assists financial advisors, insurance agents, and clients with retirement planning, specializing in annuities and life insurance products. As part of those services, ProVision and Couch provide advice with respect to the purchase of annuity products in IRAs, including in connection with rollovers from 401ks and other employer benefit plans under ERISA.

11.     Defendant DOL is an agency of the United States government subject to the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 551(1).

12.     Defendant Martin J. Walsh is the U.S. Secretary of Labor and is subject to the APA. *See* 5 U.S.C. § 551(1). Mr. Walsh is sued in his official capacity as head of the DOL.

### III.  JURISDICTION AND VENUE

13.     This action arises under the U.S. Constitution, the APA, 5 U.S.C. § 500, *et seq.,* ERISA, 29 U.S.C. § 1001, *et seq.*, and the Code, 26 U.S.C. § 1, *et seq.* Jurisdiction therefore lies in this Court under 28 U.S.C. § 1331.

14.     Lown, Messing, Miles, Bellman, Golden Age, ProVision and Couch (collectively, the "Agent Plaintiffs") are all licensed independent insurance agents in the State of Texas. All of the Agent Plaintiffs are members of FACC. The Agent Plaintiffs are

actively engaged in assisting clients with, among other things, the purchase of financial products in connection with retirement planning. The Agent Plaintiffs oftentimes make rollover recommendations for purchase of annuities to IRA owners and participants in employer-sponsored 401k and similar benefit plans, for which they receive commissions or other compensation from annuity issuers. The Agent Plaintiffs will thus be directly and adversely affected by the DOL's New Interpretation suddenly categorizing their status as investment advice fiduciaries under ERISA or the Code, as applicable.

15.     In addition, FACC has associational standing to bring this suit on behalf of its various members because those members will be directly and adversely affected by the DOL's New Interpretation and thus would have standing to sue in their own right. The interests FACC seeks to protect are germane to its corporate purposes, and neither the claims asserted nor the relief requested herein require an individual member to participate in this suit. *See, e.g., Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010).

16.     Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is an action against an officer and an agency of the United States, Plaintiff Lown resides in this judicial district and division, and no real property is involved in this action.

## IV.  FACTUAL BACKGROUND

### A.     THE LONG-STANDING REGULATORY REGIME

17.     The Fifth Circuit's opinion in *Chamber of Commerce* ably describes the long-settled test for determining who will be deemed an investment advice fiduciary under ERISA and the Code, which was explicated in the DOL's 1975 rule. In this regard, Title I

of ERISA gives the DOL regulatory authority over union and employer sponsored retirement and welfare benefit plans. *See* 29 U.S.C. §§1108(a) and (b), 1135. ERISA provides that a party is a fiduciary with respect to an ERISA plan to the extent that party (a) exercises discretionary authority or control over the management of the plan or its assets, (b) renders advice for a fee or other compensation with respect to the assets of the plan, or (c) has discretionary authority or control of the plan administration. *Id*. § 1002(21)(A). The second of these three subparts describes the party often referred to as an investment advice fiduciary, and is the prong at issue here.

18.     An ERISA plan fiduciary is subject to duties of loyalty and prudence. *Id*. § 1004(a)(1). Such fiduciaries cannot engage in "prohibited transactions," which include receiving commissions paid by a third party or compensation that varies based on the advice given. *Id*. § 1106(b)(3). The statute authorizes DOL to sue ERISA plan fiduciaries to enforce these duties. *Id*. § 1132(a).

19.     Title II of ERISA created individual retirement accounts and similar tax advantaged accounts (collectively, "IRAs") as part of the Code. 26 U.S.C. § 4975(e)(1)(B). Notably, the DOL does not have supervisory regulatory authority with respect to IRAs comparable to its authority over ERISA Title I plans, and the Code does not impose statutory duties of loyalty and prudence on fiduciaries. Instead, the Code allows the IRS to impose an excise tax on prohibited transactions involving either ERISA or IRA fiduciaries. *Id*. § 4975. The only role granted to the DOL with respect to IRAs is to define "accounting, technical and trade terms," 29 U.S.C. § 1135, and to grant exemptions from the Code's prohibited transaction provisions (*i.e.*, PTEs). *Id*. §1108(a), 26 U.S.C. § 4975(c)(2).

20.     As noted above, in 1975 the DOL promulgated a five-part test for determining who is an investment advice fiduciary under ERISA and the Code. That test required that a fiduciary is one who, among other things, renders investment advice or recommendations on a regular basis pursuant to a mutual agreement between such person and the plan. 29 C.F.R. § 2510.2-21(c)(1).

21.     The 1975 rule "captured the essence of a fiduciary relationship known to the common law as a special relationship of trust and confidence between the fiduciary and his client." *Chamber of Commerce*, 885 F.3d at 365. Moreover, as the Fifth Circuit explained:

> The regulation also echoed the then thirty-five-year old distinction drawn between an "investment adviser," who is a fiduciary regulated under the Investment Advisers Act, and a "broker or dealer" whose advice is "solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor." 15 U.S.C. § 80b-2(a)(11)(C). Thus, the DOL's original regulation specified that a fiduciary relationship would exist only if, *inter alia*, the adviser's services were furnished "regularly" and were the "primary basis" for the client's investment decisions. 29 C.F.R. § 2510.3-21(c)(1) (2015).

*Id.*

22.     This long-standing understanding of who is a fiduciary, as well as the settled expectations of financial and insurance professionals, were suddenly overthrown in 2016 however when the DOL promulgated the Fiduciary Rule.

## B.     THE FIDUCIARY RULE

23.     The 2016 Fiduciary Rule was actually a "package of seven different rules that broadly reinterpret[ed] the term 'investment advice fiduciary' and redefine[d] exemptions to provisions concerning fiduciaries" for purposes of ERISA and the Code. *Id.* at 363. Specifically, the DOL replaced the 1975 rule and effectively sought to redefine who

was an "investment advice fiduciary" to include anyone who rendered investment advice for a fee to an ERISA plan or beneficiary. *Id*. at 369.

24.     Recognizing its new definition of an investment advice fiduciary would encompass "virtually all financial and insurance professionals who do business with ERISA plans and IRA holders," the DOL also promulgated as part of the Fiduciary Rule a new PTE, known as the Best Interest Contract Exemption (the "BIC Exemption"). *Id.* at 366-67. To qualify for the BIC Exemption, "providers of financial and insurance services must enter into contracts with clients that, *inter alia,* affirm their fiduciary status; incorporate 'Impartial Conduct Standards' that include the duties of loyalty and prudence; 'avoid[ ] misleading statements;' and charge no more than 'reasonable compensation.'" *Id*. at 367. Finally, the DOL also amended another existing PTE, *i.e.*, PTE 84-24, which covered transactions involving insurance and annuity contracts and permitted payment of reasonable and customary sales commissions. *Id*. As amended, PTE 84-24 subjected such transactions to the same Impartial Conduct Standards as the BIC Exemption and removed fixed indexed annuities from the scope of the exemption. *Id*.

25.     A number of business groups and trade organizations filed suit in the Northern District of Texas challenging the 2016 Fiduciary Rule. The district court granted summary judgment for the DOL, but the Fifth Circuit reversed and vacated the rule *in toto*. The Fifth Circuit held that the Fiduciary Rule significantly expanded and conflicted with the statutory definition of fiduciary in ERISA and the Code, and the DOL therefore lacked the authority to promulgate the Fiduciary Rule. *Id*. at 379. The Fifth Circuit likewise held that the Fiduciary Rule was an unreasonable interpretation of the statutory text under

*Chevron, USA, Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The Fifth Circuit reasoned that, in using the term fiduciary in ERISA and the Code, Congress intended to incorporate the well-established meaning of that common-law term, which turns on the existence of a relationship of trust and confidence. *Id*. at 369-71.

26.    While the five-part test of the 1975 rule "captured [this] essence of a fiduciary relationship" as it was known at common law, *id*. at 364-65, the Fifth Circuit held that the Fiduciary Rule improperly encompassed sales conduct on the part of financial professionals, including insurance agents, historically never considered to be fiduciary in nature. *Id*. at 372-76. As the Fifth Circuit explained, under the DOL's Fiduciary Rule, a broker or agent who makes a sales call on an IRA owner or ERISA plan participant with whom he or she had *no* preexisting relationship would nevertheless be deemed an investment advice fiduciary based on that single sales transaction. *Id*. at 369.

27.    Although the DOL's overly expansive definition of investment advice fiduciary was the central focus of the opinion in *Chamber of Commerce*, the Fifth Circuit also rejected the related BIC Exemption provisions and the amendment of PTE 84-24. Specifically, the Court held that the overbroad fiduciary definition could not be saved by the simultaneous enactment of the BIC Exemption, which the DOL unsuccessfully argued provided an exemption to financial professionals who complied with its requirements. The Fifth Circuit explained that "agencies 'are not free to adopt unreasonable interpretations of statutory provisions and then edit other statutory provisions to mitigate the unreasonableness.'" *Id*. at 383 (quoting *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 328 (2014)). Moreover, the BIC Exemption contained its own unreasonable provisions,

including a requirement that the person providing investment advice enter into a contract with the plan or participant agreeing to be a fiduciary and thereby be subject to potential liability as such. *Chamber of Commerce*, 885 F.3d at 382-85. Finally, the Fifth Circuit rejected the amendment to PTE 84-24 as arbitrary and capricious in singling out fixed indexed annuities for exclusion from the scope of the exemption. *Id*. at 385-86.

28.     In short, the Fifth Circuit roundly rejected the DOL's effort to "fundamentally transform[ ] over fifty years of settled and hitherto legal practices in a large swath of the financial services and insurance industries" with its sweeping new Fiduciary Rule. *Id*. at 363. However, rather than accept the rationale and import of the Fifth Circuit decision, as discussed below, the DOL proceeded undeterred to resurrect the substance of the Fiduciary Rule in a new package—namely, the Revised Exemption and New Interpretation.

## C.    THE NEW INTERPRETATION

29.     After the Fifth Circuit vacated the Fiduciary Rule, the DOL issued Field Assistance Bulletin ("FAB") 2018-02, providing that, pending the issuance of new regulations or guidance, DOL temporarily would not pursue prohibited transaction claims against investment advice fiduciaries who work diligently and in good faith to comply with "Impartial Conduct Standards."

30.     Then, on July 7, 2020, the DOL proposed a new PTE to be made available to "registered investment advisers, broker-dealers, banks, and insurance companies (Financial Institutions) and their individual employees, agents, and representatives (Investment Professionals) that provide fiduciary investment advice to Retirement

Investors." 85 Fed. Reg. at 82799. The same day, the DOL issued a technical amendment to 29 C.F.R. 2510-3.21 to remove the amendments to the 1975 rule that it had made in the Fiduciary Rule and to reinstate the text of the five-part test. *Id*.

31.     On December 18, 2020, following a notice and comment period, the DOL promulgated the Revised Exemption and accompanying New Interpretation. Although the Revised Exemption became effective 60 days after its publication in the Federal Register, the DOL extended its policy of suspending enforcement of the prohibited transaction rules under FAB 2018-02 through December 20, 2021. 85 Fed. Reg. at 82845. The DOL then subsequently extended the protection of FAB 2018-02 through January 31, 2022.

### D.     THE NEW INTERPRETATION IS INCOMPATIBLE WITH THE CORE HOLDING OF *CHAMBER OF COMMERCE*

32.     As noted, the DOL's latest regulatory pronouncement leaves the text of the 1975 rule intact. Rather than modify the five-part test, the DOL has now provided, within its New Interpretation, a reinterpretation of how that test should be applied in a way that is impossible to square with the Fifth Circuit's decision.

33.     Like the Fiduciary Rule before it, the New Interpretation radically changes who will be deemed a fiduciary for purposes of ERISA and the Code. In this regard, a particularly troubling part of the New Interpretation is DOL's position regarding when an Investment Professional will be deemed a fiduciary covered by ERISA in connection with an ERISA plan participant's rollover of assets to an IRA. Ostensibly deferring to the ruling in *Chamber of Commerce*, the DOL "acknowledges that single instance of advice to take a distribution from [an ERISA] Plan and roll over the assets" would fail to meet the "regular

basis" element of the five-part test in the reinstated 1975 rule. 85 Fed. Reg. at 82805. However, the New Interpretation provides that such advice rendered by someone who has not previously provided advice to the plan participant but may do so in the future would constitute the start of an investment advice relationship and, therefore, render him or her a fiduciary. *Id*. This semantic distinction is meaningless from a practical standpoint, as all Investment Professionals seek to establish and maintain relationships with customers and potential customers, not avoid them.

34.     The *Chamber of Commerce* decision did not turn on the question of how many instances of investment advice would be sufficient to demonstrate the existence of a fiduciary relationship. Instead, the Court repeatedly emphasized that it is the special relationship of trust and confidence that is the *sine qua non* of a fiduciary relationship. As the Fifth Circuit explained, that is the basis on which the common law has long distinguished between a fee-based investment adviser and a securities or insurance salesperson. The New Interpretation, however, continues to ignore these well-settled concepts, opting instead for a simplistic artificial analysis that distinguishes only between one-time advice (not fiduciary) and one-time advice plus *any* ongoing or hoped for future relationship (fiduciary).

35.     The New Interpretation also gives short shrift to the mutual agreement prong of the five-part test. In this regard, the New Interpretation simply assumes that any type of ongoing relationship with an Investment Professional must be fiduciary in nature, without any meaningful consideration of whether the marketplace or the parties themselves would expect that to be the case. Moreover, the DOL also takes the position that the parties cannot

define the nature of the relationship themselves by agreeing to an explicit disclaimer that an Investment Professional is not a fiduciary. 85 Fed. Reg. at 82806.

36.     In vacating the prior Fiduciary Rule, the Fifth Circuit specifically noted "that it took DOL forty years to 'discover' its novel interpretation further highlights the Rule's unreasonableness." *Id*. at 380 (citing *Util. Air Regulatory Grp. v. EPA*, 134 S.Ct. 2427, 2444 (2014)). That DOL now seeks to impose that same interpretation via the New Interpretation rather than by formal rule does not cure this unreasonableness. Indeed, as if to underscore that the DOL intends to get to the same place it did in 2016 with its ill-fated Fiduciary Rule, but by a different route, the New Interpretation also expressly disavows the DOL's longstanding position regarding application of ERISA to employer plan to IRA rollover transactions as set forth in the so-called "Deseret Letter."[2] 85 Fed. Reg. at 82803-04.

37.     In the Deseret Letter, the DOL concluded that advising a plan participant to take a distribution from the participant's account in an ERISA plan, even when combined with a recommendation as to how such distribution should be invested, would not constitute investment advice by a fiduciary relative to assets of the ERISA plan.  The Deseret Letter was based on the DOL's position, correct both in historical context and statutory construction, that the text of ERISA and the 1975 rule identified those providing fiduciary advice "with respect to the assets of an employee benefit plan," and that any "investment recommendations regarding the proceeds of distributions would be advice

---

[2] Advisory Opinion 2005-23A (Dec. 7, 2005).

with respect to the funds that are no longer assets of the plan." Advisory Opinion 2005-23A. As with its newly discovered expansive definition of fiduciary, the DOL has now arbitrarily discarded this previously clear line between what does and does not constitute providing advice with respect to employer plan assets.

38.     The DOL's New Interpretation of the five-part test, combined with its disavowal of the Deseret Letter, makes clear the overarching intent of the agency: the DOL seeks broad authority over the individual IRA market particularly with respect to rollovers from ERISA Title I plans. However, Congress never granted the DOL the authority it now seeks to usurp, even now still undaunted by the Fifth Circuit's prior ruling striking down its first attempt. This egregious overreach by DOL is particularly significant to Plaintiffs because, as DOL was advised in public comments during its review of the New Interpretation, approximately one-half of annuity products sold by insurance agents are IRA or tax-qualified products. 85 Fed. Reg. at 82850, n. 170.

39.     The fundamental problems of the New Interpretation are not ameliorated, and certainly are not cured, by the limited protection from prohibited transaction liability provided by the Revised Exemption for several reasons. First, as the Fifth Circuit observed, the fact that the Revised Exemption is necessary "to blunt the overinclusiveness" of the DOL's new interpretation of the five-part test merely reinforces its overreach in seeking to regulate actors and transactions in the Title II market that DOL has admitted Congress never intended to cover as fiduciaries. *Chamber of Commerce*, 885 F.3d at 381-82. The DOL is "not free to adopt unreasonable interpretations of statutory provisions and then edit

other statutory provisions to mitigate the unreasonableness." *Util. Air Regulatory Grp.*, 134 S.Ct. at 2466 (internal quotations and alterations omitted).

40.     Moreover, the Revised Exemption suffers many of the same flaws as the BIC Exemption whose features the Fifth Circuit held were irreconcilable with the statutory framework of ERISA. In this regard, like the BIC Exemption, the Revised Exemption requires an Investment Professional to acknowledge being a fiduciary upfront to avail himself or herself of the exemption. This acknowledgment requirement, as explained in the New Interpretation, makes clear that the Revised Exemption is not intended merely as a safe harbor that an Investment Professional can fall back on if, based on the facts and circumstances, it is later determined that the advisor is in fact a fiduciary. 85 Fed. Reg. at 82828. Thus, as with the BIC Exemption, insurance agents can preserve their ability to receive commissions on the sale of annuities under the Revised Exemption only by declaring themselves to be fiduciary and exposing themselves to whatever other regulation and liabilities that may entail. *Chamber of Commerce*, 886 F.3d at 382.[3]

41.     In sum, just as surely as it attempted to do with the now-vacated Fiduciary Rule, the DOL is attempting to fundamentally reshape "over fifty years of settled and hitherto legal practices in a large swath of the financial services and insurance industries" through its New Interpretation. *Chamber of Commerce*, 885 F.3d at 363.  As noted above,

---

[3] The DOL has, for now, left intact PTE 84-24, which is the class exemption that many insurance agents selling annuities may rely upon if the New Interpretation is allowed to stand.  However, the DOL has already announced its intention to modify or revoke PTE 84-24. Moreover, regardless of PTE 84-24's potential application, the fact remains that by recategorizing agents as fiduciaries and asserting ERISA coverage over IRA sales, the DOL exposes everyday insurance agents to legal requirements and risks that are not appropriately attendant to their sales activities.

the temporary protection from this sea change afforded under FAB 2018-02 expired January 31, 2022, and the Agent Plaintiffs and the annuities industry at large are therefore now subject to significant new regulatory and financial risks. Plaintiffs are asking this Court to intervene to uphold the ruling of the Fifth Circuit as it applies to the DOL's thinly disguised repackage of the Fiduciary Rule.

## V.   CAUSES OF ACTION

A.   **THE DOL HAS EXCEEDED ITS AUTHORITY UNDER ERISA, THE CODE, AND THE APA IN PROMULGATING THE NEW INTERPRETATION**

42.     Plaintiffs adopt and incorporate by this reference the allegations contained in paragraphs 1 through 41 above.

43.     Congress granted the DOL regulatory authority over Title I employee benefit plans, but not individual IRAs. The DOL's authority with respect to Title II is limited to defining technical and accounting terms and providing exemptions for prohibited transactions.

44.     In adopting the New Interpretation, along with its withdrawal of the Deseret Letter, the DOL seeks to disregard Congress' intent and assert the right to regulate actors and transactions beyond its statutory authority by redefining the term "fiduciary" in an impermissibly broad manner. This effort to assert new regulatory jurisdiction in the IRA market disregards Congress' distinction between the DOL's authority to interpret technical and accounting terms for purposes of Title II and its far broader regulatory authority over Title I employer benefit plans.

45.     The New Interpretation is a final agency action subject to review under the APA. Because the DOL's promulgation of the New Interpretation was arbitrary, capricious, and not otherwise in accordance with ERISA and the Code, Plaintiffs are entitled to relief under 5 U.S.C. §§ 702, 706, for which they bring this suit. The New Interpretation should be declared unlawful and vacated, and the DOL should be enjoined from enforcing, implementing, or otherwise giving the New Interpretation effect in any manner.

**B.   THE NEW INTERPRETATION VIOLATES THE APA BECAUSE IT IS ARBITRARY, CAPRICIOUS, AND IRRECONCILABLE WITH THE TEXT OF ERISA AND THE CODE**

46.     Plaintiffs adopt and incorporate by this reference the allegations contained in paragraphs 1 through 45 above.

47.     When Congress used the term "fiduciary" in the text of ERISA and the Code, it plainly intended to incorporate the traditional and historic meaning of that word as reflected in the common law, the law of trusts, and the Investment Advisers Act. A fiduciary duty does not exist in every commercial or financial relationship, but only in those where there exists a special relationship of trust and confidence between the parties. And in the context of investment advice provided for a fee, it has long been the rule that only where it is the advice that is paid for, not the investment product being purchased or sold, that a fiduciary relationship may arise.

48.     The interpretation of fiduciary provided in the New Interpretation is fundamentally inconsistent with Congress' intent as expressed in the text of ERISA and the Code, as well as the historical and common law understanding of the term. Likewise,

the sudden reversal of the longstanding position expressed in the Deseret Letter concerning advice relating to proceeds from employer plan distributions defies Congressional intent. The Fifth Circuit flatly rejected the DOL's attempt to rewrite the meaning of fiduciary and usurpation of regulatory authority when it attempted to do so directly in adopting the Fiduciary Rule in 2016. The DOL may not now do indirectly what it was prevented from doing directly in *Chamber of Commerce*.

49.     The DOL's interpretation of the term "fiduciary" expressed in the New Interpretation, including its withdrawal of the Deseret Letter, is not a permissible construction of ERISA or the Code and is unreasonable. The New Interpretation is a final agency action subject to review under the APA, and the DOL's interpretation of fiduciary as set forth therein was arbitrary, capricious, and not otherwise in accordance with ERISA and the Code. Plaintiffs are therefore entitled to relief under 5 U.S.C. §§ 702, 706, for which they bring this suit. The New Interpretation should be declared unlawful and vacated, and the DOL should be enjoined from enforcing, implementing, or otherwise giving the New Interpretation effect in any manner.

## VI.   **PRAYER FOR RELIEF**

50.     Plaintiffs pray that Defendants be summoned to appear and answer herein, and that judgment be entered:

> a.  Declaring that the New Interpretation was promulgated by the DOL in excess of its statutory jurisdiction, authority, or limitations within the meaning of 5 U.S.C. § 706(2)(C) and is arbitrary, capricious, or otherwise contrary to law within the meaning of 5 U.S.C. § 706(2)(A);

b.  Vacating and setting aside the New Interpretation in its entirety;

c.  Enjoining the DOL and all of its officers, employees and agents from implementing, applying, or taking any action of any type under the New Interpretation anywhere within the DOL's jurisdiction;

d.  Awarding Plaintiffs their costs incurred in bringing this action; and

e.  Granting such other and further relief as the Court determines is appropriate.

Dated: February 2, 2022                     Respectfully submitted,

                                            By: */s/ Don Colleluori*_____
                                                Andrew G. Jubinsky
                                                Texas Bar No. 11043000
                                                andy.jubinsky@figdav.com
                                                Don Colleluori
                                                Texas Bar No. 04581950
                                                don.colleluori@figdav.com

                                            **FIGARI + DAVENPORT, LLP**
                                            901 Main Street, Suite 3400
                                            Dallas, Texas 75202
                                            (214) 939-2000
                                            (214) 939-2090 (Fax)

                                            **ATTORNEYS FOR PLAINTIFFS**