# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| FEDERATION OF AMERICANS FOR CONSUMER CHOICE, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR, and MARTIN J. WALSH, in his official capacity as SECRETARY OF LABOR, <br><br> *Defendants*. | Civil Action No. 3:22-cv-00243-K |

**BRIEF OF *AMICUS CURIAE* AMERICAN COUNCIL OF LIFE INSURERS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

STATEMENT OF INTEREST OF *AMICUS CURIAE* ................................................................ 1

INTRODUCTION ........................................................................................................................ 2

BACKGROUND .......................................................................................................................... 4

ARGUMENT ................................................................................................................................ 8

   I.   DOL's New Interpretation is Inconsistent with the Fifth Circuit's *Chamber of Commerce* Decision. ................................................................................................... 8

   II.   DOL's New Interpretation Improperly Seeks to Combine Separate IRA and ERISA Plan Relationships to Confer ERISA Fiduciary Status on Rollover Recommendations. .... 11

      A.  ERISA Plans and IRAs are Legally Distinct and Separately Governed Plans. ............... 12

      B.  Without Improperly Combining Separate IRA and ERISA Plan Relationships, ERISA Fiduciary Status Cannot Apply to a Rollover Recommendation Where There is No Pre-Existing Relationship. ........................................................................ 14

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                           **Page(s)**

*Beck v. PACE Int'l Union*,
   551 U.S. 96 (2007) ............................................................................................... 4-5, 14

*Chamber of Com. of United States of Am. v. United States Dep't of Lab.*,
   885 F.3d 360 (5th Cir. 2018) ................................................................................. *passim*

*Data Mktg. P'ship, LP v. United States Dep't of Lab.*,
   No. 20-11179, 2022 WL 3440652 (5th Cir. Aug. 17, 2022) ....................................... 13

*I.N.S. v. Cardoza-Fonseca*,
   480 U.S. 421 (1987) ..................................................................................................... 15

*In re Long Chevrolet, Inc.*,
   79 B.R. 759 (N.D. Ill. 1987) ........................................................................................ 15

*LaRue v. DeWolff, Boberg & Associates, Inc.*,
   552 U.S. 248 (2008) ..................................................................................................... 15

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ....................................................................................................... 4

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ....................................................................................................... 4

*SAS Inst., Inc. v. Iancu*,
   138 S. Ct. 1348 (2018) ................................................................................................. 11

*Schlumberger Tech. v. Swanson*,
   959 S.W.2d 171 (Tex. 1997) ............................................................................... 7, 8, 14

*Stinson v. United States*,
   508 U.S. 36 (1993) ................................................................................................. 11, 13

*W. Virginia v. Env't Prot. Agency*,
   142 S. Ct. 2587 (2022) ................................................................................................. 11

*Young v. Principal Fin. Grp., Inc.*,
   547 F. Supp. 2d 965 (S.D. Iowa 2008) ........................................................................ 15

**Statutes**

5 U.S.C. § 706(2)(A) ............................................................................................................ 9

26 U.S.C. § 4975(e) ....................................................................................................... 2, 12

29 U.S.C. § 1002 ............................................................................................................ 2, 4, 11, 12

29 U.S.C. § 1104(a) ................................................................................................................... 4

**Regulations**

29 C.F.R. § 2510.3-2(d) ........................................................................................................... 13

29 C.F.R. § 2510.3-21(c)(1) ...................................................................................................... 5

*Definition of the Term "Fiduciary"; Conflict of Interest Rule—Retirement Invest*ment Advice,
   81 Fed. Reg. 20,946 (April 8, 2016) ....................................................................................... 6

*Prohibited Transaction Exemption 2020-02, Improving Investment Advice for Workers & Retirees*,
   85 Fed. Reg. 82,798 (Dec. 18, 2020) ............................................................................... *passim*

**Other Authorities**

*American Securities Association v. Secretary of Labor*, Case No. 22-cv-00330,
   Dkt. 49 at 37 (M.D. Florida June 30, 2022) ("DOL Florida Brief") ................................. *passim*

DOL, Advisory Opinion 2005-23A ("Deseret Letter") ..................................................... 5, 6, 7, 15

New Fiduciary Advice Exemption: PTE 2020-02 Improving Investment Advice for
   Workers & Retirees Frequently Asked Questions (April 2021) ("FAQ") ......................... 7, 9, 11

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

The American Council of Life Insurers ("ACLI") is the nation's largest life insurance trade association, with nearly 300 member companies and representing approximately 94% of industry assets in the United States. ACLI's member companies provide annuities and other products, including guaranteed retirement income products, that allow American consumers to attain, preserve, and protect financial wellbeing and security.

This case concerns the legal duties that attend sales recommendations of annuities and life insurance industry products to 401(k) and similar employer-sponsored plans and to Individual Retirement Accounts and Annuities (collectively, "IRAs"). In *Chamber of Commerce, et al. v. United States Department of Labor* – in which ACLI was one of the lead plaintiffs – the Fifth Circuit held that agents and other persons engaged in such sales activities are not "fiduciaries" for purposes of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Internal Revenue Code of 1986 (the "Code") absent a special relationship of "trust and confidence." On that basis, the Fifth Circuit vacated the 2016 Fiduciary Rule adopted by the United States Department of Labor ("DOL") that copiously conferred fiduciary status on the basis of sales recommendations.

DOL, which "continues to believe" the Fifth Circuit's decision "was in error," refuses to abide by several key aspects of the decision. ACLI has a substantial interest in ensuring that consumer access to annuities and other retirement products through traditional insurance sales channels is not disrupted by DOL's efforts to undermine the *Chamber of Commerce* decision.

All parties have consented to ACLI's filing of this brief as *amicus curiae*.[1]

---

[1] No party or their counsel authored this brief in whole or in part, and no person other than ACLI contributed money to preparing or submitting this brief.

1

**INTRODUCTION**

This case concerns who may be properly considered an "investment advice" fiduciary under ERISA and the Code.[2] The legal principles necessary to resolve this case are straightforward and have already been identified and applied by the Fifth Circuit, which rejected DOL's prior attempt to dramatically expand the definition of a fiduciary beyond that which Congress codified when it provided for investment advice fiduciaries. In *Chamber of Commerce*, the Fifth Circuit held that "Congress codified the touchstone of common law fiduciary status—the parties' underlying relationship of trust and confidence" which requires, *inter alia*, an "intimate relationship between adviser and client beyond ordinary buyer-seller interactions," which "must exist prior to, and apart from" the subject transaction. *See Chamber of Com. of United States of Am. v. United States Dep't of Lab.*, 885 F.3d 360, 369, 374, 382 n.15 (5th Cir. 2018); 29 U.S.C. § 1002(21)(A)(ii).

DOL refuses to abide by the Fifth Circuit's holdings in this regard, and recently told another federal court that "[t]he Department continues to believe" that "the Fifth Circuit's [holding] that ERISA's definition of fiduciary . . . necessitat[es] 'a special relationship of trust and confidence between the fiduciary and his client' . . . was in error." *American Securities Association v. Secretary of Labor*, Case No. 22-cv-00330, Dkt. 49 at 37 (M.D. Fla. June 30, 2022) ("DOL Florida Brief"). When a federal court interprets the meaning of an unambiguous statute, as the Fifth Circuit did in *Chamber of Commerce*, a federal agency is not free to contravene that interpretation.

---

[2] Section 3(21)(A)(ii) of ERISA, 29 U.S.C. § 1002(21)(A)(ii), and Section 4975(e)(3)(B) of the Code, 26 U.S.C. § 4975(e)(3)(B), contain parallel provisions defining a person who "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or who has any authority or responsibility to do so" as a fiduciary to the plan. Unless otherwise indicated, references in this brief to ERISA's fiduciary definition under Section 3(21)(A)(ii) include the parallel definition under Code Section 4975(e)(3)(B).

2

If allowed to stand, DOL's new "final interpretation" of its investment advice fiduciary regulations would achieve the same functional outcome sought by the 2016 Fiduciary Rule that the Fifth Circuit rejected and invalidated. DOL's new interpretation once again "mixes apples and oranges" by "[t]ransforming sales pitches into the recommendations of a trusted adviser." *Chamber of Com.*, 885 F.3d at 382. Under DOL's final interpretation, investment sales professionals are deemed to function as investment advice fiduciaries even in the absence of any pre-existing relationship with an ERISA plan or participant, as long as there is "an intended future ongoing relationship." This directly contravenes the Fifth Circuit's *Chamber of Commerce* decision in at least two fundamental ways.

- *First*, DOL is using "the beginning of an ongoing relationship" to render a financial professional a fiduciary, even though the Fifth Circuit held that the "relationship must exist prior to, and apart from" the subject transaction. *See infra* at 8-9.

- *Second*, given that most financial professionals seek to develop an ongoing relationship with a new client, DOL is including "ordinary buyer-seller interactions" as fiduciary in nature, even though the Fifth Circuit held that ERISA investment advice fiduciary status requires a "relationship . . . beyond ordinary-buyer seller interactions." *See infra* at 9-10.

DOL's refusal to follow Fifth Circuit precedent is not excused by the agency's desire to have ERISA's fiduciary standards apply to "advice to roll over [ERISA] Plan assets to IRAs." Indeed, DOL unsuccessfully advanced this exact same justification before the Fifth Circuit in *Chamber of Commerce*, where it claimed that it needed "to fill [a] perceived gap" in the regulation of IRAs. But DOL cannot rewrite a statute just because it is dissatisfied with what Congress wrote. As the Fifth Circuit confirmed in *Chamber of Commerce*, Congress chose to treat the fiduciary obligations governing IRAs differently from the fiduciary obligations governing ERISA plans. In fact, because Congress separately defined ERISA plans and IRAs and made investment advice fiduciary status contingent on advice "with respect to any moneys or other property of such plan"

(i.e., either an ERISA plan or an IRA, respectively, but in either case with respect to the moneys or property of *that* plan), DOL encounters yet another clear statutory barrier in attempting to apply its new interpretation of fiduciary status to rollover transactions. The statute does not permit DOL to merge together a potential future advice relationship with an IRA holder with a one-time ERISA plan rollover recommendation as a basis for finding a fiduciary relationship with both. *See infra* at 11-15.

## BACKGROUND

Congress did not provide DOL with the unfettered ability to regulate the retirement services marketplace. Instead, it enacted ERISA, which is "a 'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993).

Title I of ERISA imposes fiduciary duties of prudence and loyalty, *see* 29 U.S.C. § 1104(a), and defines fiduciary status by reference to the person's functional relationship to an employee benefit plan or the assets of that employee benefit plan. *See* 29 U.S.C. § 1002(21)(A) (defining a "fiduciary with respect to a plan"); *id*. § 1002(3) (defining a "plan"); *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000) ("[T]he statute does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead it defines an administrator, for example, as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan."). In particular, ERISA provides that "a person is a fiduciary with respect to a plan to the extent . . . he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan." 29 U.S.C. § 1002(21)(A)(ii). Once assets are withdrawn from an ERISA plan, ERISA and its attendant fiduciary duties no longer apply. *See Beck v. PACE Int'l Union*,

551 U.S. 96, 106 (2007) (holding that the "purchase of annuities . . . formally severs the applicability of ERISA to plan assets").

Unlike Title I of ERISA, under Title II of ERISA – which "created tax-deferred personal IRAs and similar accounts within the Internal Revenue Code" – "service providers to IRA clients are not statutorily required to abide by duties of loyalty and prudence." *Chamber of Com.*, 885 F.3d at 364, 367.  And "Title II did not authorize DOL to supervise financial service providers to IRAs in parallel with its power over ERISA plans." *Id*. at 364.

This regime was uncontroversial for more than 35 years.  In 1975 (the year after ERISA was enacted), "DOL promulgated a five-part . . . test for determining who is a fiduciary" with respect to the provision of investment advice.  *See id*.  "Under that test, an investment-advice fiduciary is a person who (1) renders advice or makes recommendations as to the advisability of investing in, purchasing, or selling securities or other property; (2) on a regular basis; (3) pursuant to a mutual agreement between such person and the plan; and the advice (4) serves as a primary basis for investment decisions with respect to plan assets; and (5) is individualized based on the particular needs of the plan." *Id*. (citing 29 C.F.R. § 2510.3-21(c)(1) (2015)) (cleaned up).  In a subsequent opinion letter, DOL confirmed that "[a]ny investment recommendation regarding the proceeds of a distribution [from an ERISA plan] would be advice with respect to funds that are no longer assets of the plan."  DOL Advisory Opinion 2005-23A ("Deseret Letter").  Accordingly, as long as the person providing advice was not "already a plan fiduciary," any advice given to an ERISA plan participant about withdrawing their assets from an ERISA plan or what to do with their money after it was outside of an ERISA plan, was not subject to ERISA's fiduciary requirements and was outside the scope of DOL's authority.  *See id.*  This was the case even if the advice was to "roll over his or her account balance to an individual retirement account (IRA)." *Id*.

5

DOL changed its mind and issued the 2016 Fiduciary Rule, which purported "to regulate in an entirely new way hundreds of thousands of financial service providers and insurance companies in the trillion dollar markets for ERISA plans and individual retirement accounts (IRAs)." *Chamber of Com.*, 885 F.3d at 363. In doing so, DOL claimed that its own longstanding regulation "significantly narrowed the breadth of the statutory definition of fiduciary investment advice by creating a five-part test that must . . . be satisfied before a person can be treated as a fiduciary adviser," and "replace[d] the . . . five-part test with a new definition," which, *inter alia*, "supersede[d]" the Deseret Letter. *See Definition of the Term "Fiduciary"; Conflict of Interest Rule—Retirement Investment Advice*, 81 Fed. Reg. 20,946, 20,964 (April 8, 2016). Under DOL's 2016 Fiduciary Rule, "recommendations on distributions (including rollovers or transfers into another plan or IRA) . . . would be covered by Title I of ERISA," regardless of whether the alleged fiduciary had any pre-existing relationship with an ERISA plan or participant. *See id*. at 20,964. Two months after DOL issued the 2016 Fiduciary Rule, ACLI filed a lawsuit seeking vacatur under the Administrative Procedure Act ("APA"). ACLI's lawsuit was consolidated with two other challenges to the 2016 Fiduciary Rule, and, in 2018, the Fifth Circuit sided with ACLI and vacated the 2016 Fiduciary Rule "*in toto*." *See Chamber of Com.*, 885 F.3d at 363 n.1, 388.

In vacating the 2016 Fiduciary Rule, the Fifth Circuit held that DOL was wrong to apply ERISA's fiduciary obligations to "one-time IRA rollover or annuity transactions where it is ordinarily inconceivable that financial salespeople or insurance agents will have an intimate relationship of trust and confidence with prospective purchasers." *Chamber of Com.*, 885 F.3d at 380, 388. The Fifth Circuit explained that ERISA "codified the touchstone of common law fiduciary status—the parties' underlying relationship of trust and confidence," which requires, *inter alia*, "an intimate relationship between adviser and client beyond ordinary buyer-seller

6

interactions" that "must exist prior to, and apart from" the subject transaction. *See id*. at 369, 374, 382 & n.15 (quoting *Schlumberger Tech. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)). The Fifth Circuit also noted the practical consequences of DOL's overreach, which "includ[ed] the withdrawal of several major companies . . . from . . . segments of the . . . retirement investor market" and the likelihood that "many" others would follow were the 2016 Fiduciary Rule upheld. *See id.* at 368.

Having failed at its attempt to "supersede" the Deseret Letter with the 2016 Fiduciary Rule, DOL issued what Plaintiffs refer to as the "Revised Exemption" in 2020, which sought to effectuate the same result by withdrawing the Deseret Letter and issuing a contrary "final interpretation" in the Federal Register. *See Prohibited Transaction Exemption 2020-02, Improving Investment Advice for Workers & Retirees*, 85 Fed. Reg. 82,798, 82,804 (Dec. 18, 2020) ("[T]the statements made in the preamble to the now-vacated 2016 fiduciary rule are also unpersuasive as to the effect of the Deseret Letter . . . . Rather than take the 2016 fiduciary rule's approach of removing the five-part test through an amendment to the Code of Federal Regulations and, thus, 'superseding' the Deseret Letter, the Department now is only changing its view on the Deseret Letter . . . ."). DOL now claims that "advice to roll assets out of a Title I Plan into an IRA where the investment advice provider has not previously provided advice" is subject to ERISA's fiduciary requirements if it "mark[s] the beginning of an ongoing relationship" or "an intended future ongoing relationship." *See id.* at 82,805; New Fiduciary Advice Exemption: PTE 2020-02 Improving Investment Advice for Workers & Retirees Frequently Asked Questions, Q7 (April 2021) ("FAQ").[3] And even though any such ongoing or intended future ongoing relationship,

---

[3] https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/new-fiduciary-advice-exemption.

7

should it arise, would involve solely the IRA and not the ERISA plan from which the rollover was distributed, DOL asserts that a fiduciary advice relationship would apply at the ERISA plan level as well as at the IRA level.

## ARGUMENT

I. **DOL's New Interpretation is Inconsistent with the Fifth Circuit's *Chamber of Commerce* Decision.**

In *Chamber of Commerce*, the Fifth Circuit held that ERISA "codified the touchstone of common law fiduciary status—the parties' underlying relationship of trust and confidence," which requires, *inter alia*, "an intimate relationship between adviser and client beyond ordinary buyer-seller interactions" that "must exist prior to, and apart from" the subject transaction. *See id*. at 369, 374, 382 & n.15 (quoting *Schlumberger*, 959 S.W.2d at 177). *See also id.* at 377 ("Salespeople in ordinary buyer-seller transactions have no such [fiduciary] authority or responsibility."). In keeping with its view that the Fifth Circuit's holdings in this respect were "in error," DOL Florida Brief at 37, the "final interpretation" accompanying the Revised Exemption disregards them.

*First*, in defiance of the Fifth Circuit's holding that the "relationship must exist prior to, and apart from" the subject transaction, *id.* at 382 n.15 (quoting *Schlumberger*, 959 S.W.2d at 177), DOL asserts that "first-time advice" gives rise to ERISA fiduciary status because "[e]very relationship has a beginning." 85 Fed. Reg. at 82,806-07. Not only has DOL, just as it did in the 2016 Fiduciary Rule, improperly "[t]ransform[ed] sales pitches into the recommendations of a trusted adviser," *Chamber of Com*., 885 F.3d at 382, but DOL proclaimed that "[t]he fact that the relationship of trust and confidence starts with a recommendation to roll over the investor's retirement savings out of a Title I Plan is *not an argument* for treating the recommendation as non-fiduciary." 85 Fed. Reg. at 82,807 (emphasis added). Brushing aside the position of a federal appeals court as "not an argument," is both "arbitrary [and] capricious" and, at least in the Fifth

8

Circuit, "in excess of [the agency's] statutory . . . authority," each of which independently violate the APA and require DOL's interpretation to be "set aside."  *See* 5 U.S.C. § 706(2)(A), (C).

*Second*, in defiance of the Fifth Circuit's holding that ERISA fiduciary status "contemplate[s] an intimate relationship between adviser and client beyond *ordinary* buyer-seller interactions," and "[s]alespeople in *ordinary* buyer-seller transactions have no such [fiduciary] authority or responsibility," *Chamber of Com.*, 885 F.3d at 374, 377 (emphasis added), DOL's final interpretation provides that a financial professional may qualify as an ERISA fiduciary on the basis of "an intended future ongoing relationship."  FAQ, Q7.  *See also* 85 Fed. Reg. at 82,805.  A financial professional seeking to develop an ongoing relationship with a new client – which most financial professionals seek to do with respect to most new clients – does not transform an "ordinary buyer-seller interaction[]" into an extraordinary one.  DOL's final interpretation treats the vast majority of financial professionals as ERISA fiduciaries in connection with their first interaction with a new client who is a participant in an ERISA plan.  This result cannot be reconciled with the Fifth Circuit's holding that an "ordinary buyer-seller interaction[]" is not fiduciary in nature.

DOL now asserts that it "took special pains to address the Fifth Circuit's concerns" in this regard.  *See* DOL Florida Brief at 37-38.  Not so.  DOL was told during the comment period for its Revised Exemption that "every financial professional wants to develop an ongoing relationship with her customers."  85 Fed. Reg. at 82,806.  DOL did not dispute that fact, and simply observed that it was still possible for a first-time transaction not to result in ERISA fiduciary status if "a retirement investor . . . expresses the intent to direct his or her own investments," or the parties "make clear in their communications that they do not intend to enter into an ongoing relationship to provide investment advice and act in conformity with that communication."  *Id*. at 82,805.  In

9

other words, DOL now *presumes* that a financial professional is an ERISA fiduciary in connection with a first-time transaction, *unless* there are certain disclosures to the contrary (although, DOL says, even written disclosures may be insufficient). *See* 85 Fed. Reg. at 82,806 ("Written statements disclaiming a mutual understanding or forbidding reliance on the advice as a primary basis for investment decisions will not be determinative . . . ."). In doing so, DOL has completely inverted the Fifth Circuit's holding – attempting to change its conclusion that an insurance agent or other investment professional engaged in selling activities ordinarily *is not* an ERISA fiduciary in a first-time transaction to a result where the same sales professional ordinarily *is* an ERISA fiduciary in a first-time transaction.

DOL also claims that its interpretation is supported by "[n]umerous sources [which] acknowledge that an *outcome* of advice given to a Retirement Investor to roll over Title I Plan assets is the compensation an advice provider receives from the investments made in an IRA." 85 Fed. Reg. at 82,805 (emphasis added). But the Fifth Circuit squarely held that the "investment advice for a fee" language in the statute does not include compensation based on outcomes (i.e., "for completed sales") but only fees paid for the advice itself. *See Chamber of Com.*, 885 F.3d at 373 ("Stockbrokers and insurance agents are compensated only for completed sales . . . not on the basis of their pitch to the client. Investment advisers, on the other hand, are paid fees because they 'render advice.' The statutory language preserves this important distinction.").

Finally, DOL has argued that even if a court concludes its final interpretation is not "in accord with the Fifth Circuit's opinion in *Chamber of Commerce*," DOL is nevertheless "entitled to deference" in its "interpretation of its own regulations." DOL Florida Brief at 36-37. DOL is wrong. The Fifth Circuit interpreted ERISA's definition of an investment advice fiduciary and found that "the statutory text is not ambiguous" and "[t]he Fiduciary Rule conflicts with the plain

10

text of the 'investment advice fiduciary' provision as interpreted in light of contemporary understandings," such that "DOL therefore lacked statutory authority to promulgate the Rule . . . ." *Chamber of Com.*, 885 F.3d at 369, 379. *See also id.* at 374 ("[C]ontemporary understanding of 'investment advice for a fee' [in 29 U.S.C. § 1002(21)] . . . contemplated an intimate relationship beyond ordinary buyer-seller interactions."); *id.* at 377 ("The phrase 'control and authority' [in 29 U.S.C. § 1002(21)] necessarily implies a special relationship beyond that of an ordinary buyer and seller."). DOL cannot interpret its own regulations in a manner that is inconsistent with what the Fifth Circuit determined was unambiguous statutory text. *See, e.g.*, *Stinson v. United States*, 508 U.S. 36, 45 (1993) (holding that "an agency's interpretation of its own regulations" may be entitled to deference "provided" that it "does not violate . . . a federal statute"); *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) ("we owe an agency's interpretation of the law no deference unless, after 'employing traditional tools of statutory construction,' we find ourselves unable to discern Congress's meaning").[4]

II. **DOL's New Interpretation Improperly Seeks to Combine Separate IRA and ERISA Plan Relationships to Confer ERISA Fiduciary Status on Rollover Recommendations.**

Even if DOL could, contrary to the *Chamber of Commerce* decision, deem investment sales professionals without a pre-existing relationship to be fiduciaries based on "an intended future ongoing relationship," FAQ, Q7, DOL would still face another insurmountable statutory barrier to

---

[4] Even if the statute were ambiguous DOL would still not be entitled to any deference. Rather, because DOL is asserting broad authority over trillions of dollars of transactions which it previously acknowledged it did not have the authority to regulate, "a merely plausible textual basis for agency action" is insufficient, and under the "major questions doctrine" DOL instead "must point to 'clear congressional authorization' for the power it claims." *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022). *See also* 85 Fed. Reg. at 82,803 ("Rollovers from Title I Plans to IRAs are expected to approach $2.4 trillion cumulatively from 2016 through 2020."). DOL cannot identify any such "clear congressional authorization."

11

imposing ERISA fiduciary obligations on rollover recommendations.  ERISA plans and IRAs are legally distinct plans governed by different sets of fiduciary obligations.  Since a rollover transaction removes assets from an ERISA plan and places them in an IRA, any "intended future ongoing relationship" would be with respect to an IRA, not an ERISA plan.  Given DOL's concession that one-time advice to roll over money from an ERISA plan to an IRA is insufficient to establish a fiduciary relationship with respect to an ERISA plan, DOL is forced to take the unsupportable position that a potential future relationship with respect to an IRA counts as a relationship with an ERISA plan.  DOL's position contravenes the plain text of the statue, ignores DOL's own existing regulations, and is arbitrary and capricious.

      A.  <u>ERISA Plans and IRAs are Legally Distinct and Separately Governed Plans.</u>

As discussed above, ERISA plans and IRAs are legally distinct plans that are governed by different sets of fiduciary obligations because "Congress chose not to require advisers to individual retirement plans to bear the duties of loyalty and prudence required of Title I ERISA plan fiduciaries." *Chamber of Com.*, 885 F.3d at 379.  *See also supra* at 4-5.  While Title I of ERISA and the Code contain parallel definitions of an investment advice fiduciary, each requires that relevant advice be "with respect to any moneys or other property of *such plan*."  *See* 29 U.S.C. § 1002(21)(A)(ii), 26 U.S.C. § 4975(e)(3)(B) (emphasis added).  And Title I of ERISA and the Code define the relevant plans differently.  For purposes of Title I of ERISA, Congress defined "[t]he term . . . 'plan' [to] mean[] an employee welfare benefit plan or an employee pension benefit plan," 29 U.S.C. § 1002(3), each of which must be "established or maintained by an employer or by an employee organization."  *Id.* §§ 1002(1)-(2).  By contrast, the Code defines a "plan" to include, *inter alia*, "an individual retirement account described in section 408(a)."  26 U.S.C. § 4975(e)(1)(B).  DOL's own regulations confirm "Individual Retirement Accounts" are not

"employee pension benefit plans" within the scope of Title I of ERISA unless an employer is actively involved in the IRA. *See* 29 C.F.R. § 2510.3-2(d).

In defiance of this clear statutory distinction, DOL claims that it has the authority to treat ERISA plans and IRAs as one and the same for purposes of determining who is an ERISA investment advice fiduciary in the context of a rollover recommendation. In particular, DOL claims that "the Department's interpretation of the regular basis prong does not artificially distinguish between advice to a Retirement Investor in a Title I Plan and advice to the same Retirement Investor in an IRA," and that it is sufficient for there to "be ongoing advice to a *'plan' (including Plans and IRAs).*" 85 Fed. Reg. at 82,807 (emphasis added). But the distinction was enacted by Congress, which decided not to apply ERISA Title I standards of prudence and loyalty to IRAs, *see Chamber of Com.*, 885 F.3d at 367, and it is therefore not artificial. In the face of Congress' separate definitions of ERISA plans and IRAs, DOL may not, under the guise of interpreting its own regulations, redefine them to be one and the same. *See, e.g.*, *Stinson*, 508 U.S. at 45 (holding that "an agency's interpretation of its own regulations" may be entitled to deference "provided" that it "does not violate . . . a federal statute"). Remarkably, DOL does not even acknowledge that its own existing regulations define ERISA plans to not include IRAs. *See* 29 C.F.R. § 2510.3-2(d). As the Fifth Circuit held earlier this month, in affirming "vacatur of [another DOL] action" as "arbitrary and capricious," DOL may not "ignore[] . . . its [own] regulation adopting a definition of [a] term . . . ." *Data Mktg. P'ship, LP v. United States Dep't of Lab.*, No. 20-11179, 2022 WL 3440652, at *6 (5th Cir. Aug. 17, 2022).[5]

---

[5] By seeking to impose the ERISA fiduciary duties of prudence and loyalty on a one-time transaction with a participant in an ERISA plan, based on a *potential* future relationship with that person in connection with a *different* plan (an IRA) with respect to which, as Congress wrote the law, there would *not* be any fiduciary duties of prudence and loyalty, it is DOL's new approach, not the status quo, that risks "defeat[ing] legitimate investor expectations of trust and confidence

13

> B. Without Improperly Combining Separate IRA and ERISA Plan Relationships, ERISA Fiduciary Status Cannot Apply to a Rollover Recommendation Where There is No Pre-Existing Relationship.

Without improperly combining separate IRA and ERISA Plan relationships, ERISA fiduciary status cannot apply to a rollover recommendation where there is not a pre-existing relationship. DOL concedes that a first-time rollover recommendation is insufficient to establish fiduciary status because it does not, by itself, represent ongoing advice with respect to plan assets. *See* 85 Fed. Reg. at 82,804 ("Nor is the Department persuaded by the commenter who suggested that a rollover transaction should always satisfy the regular basis prong on the grounds that it can be viewed as involving two separate steps—the rollover and a subsequent investment decision. These two steps do not, in and of themselves, establish a regular basis."). DOL also concedes that any potential future ongoing relationship with respect to non-plan assets would be insufficient to confer fiduciary status. *See id.* at 82,807 ("If . . . the investment professional only made recommendations to the investor on non-'plan' assets . . . he or she would not meet the 'regular basis' test based solely on additional one-time advice with respect to the Plan . . . . [T]here must be ongoing advice to a 'plan' . . . ."). That means that, absent DOL's improper conflation of ERISA plans and IRAs, *see supra* at 12-13, it is all but impossible to have ongoing advice to an ERISA plan in connection with a first-time rollover transaction because assets cease to be ERISA plan assets when they leave the plan. *See Beck*, 551 U.S. at 106 (holding that the "purchase of annuities . . . formally severs the applicability of ERISA to plan assets").

---

by arbitrarily dividing an ongoing relationship." *See* 85 Fed. Reg. at 82,807. DOL's new interpretation would provide more protection to the initial provision of rollover advice, and less thereafter. By contrast, there is nothing arbitrary about following the well-established common law principle that fiduciary duties do not apply "in a business transaction, [unless] the relationship exists prior to, and apart from" the subject transaction. *See Chamber of Com.*, 885 F.3d at 382 n.15 (quoting *Schlumberger*, 959 S.W.2d at 177).

14

It is irrelevant that, in the context of a rollover, "the IRA assets are derived, in the first place, from that Retirement Investor's Title I Plan account," 85 Fed. Reg. at 82,807, because ERISA applies to plan assets, not "assets derived from a pension plan." *In re Long Chevrolet, Inc.*, 79 B.R. 759, 763 (N.D. Ill. 1987). *See also Young v. Principal Fin. Grp., Inc.*, 547 F. Supp. 2d 965, 977 (S.D. Iowa 2008) (rejecting attempt to "expand ERISA protection to include 'former' plan assets"). The court in *Young* specifically rejected DOL's argument that the Supreme Court's decision in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008), allows plans to be disregarded as "artificial entities comprised of money or property belonging to individuals." DOL Florida Brief at 42. *See Young*, 547 F. Supp. 2d at 977-78 ("The Court in *LaRue* carefully noted that it was not providing a remedy 'for individual injuries distinct from plan injuries.' *Id*. at 1026. Indeed, Congress created ERISA to protect employee benefit plans, not to protect all assets that were at some point part of an ERISA plan. . . . [T]he Court cannot rewrite the statute to provide a remedy where none exists.").

Finally, DOL itself long acknowledged that "[a]ny investment recommendation regarding the proceeds of a distribution [from an ERISA plan] would be advice with respect to funds that are no longer assets of the plan." Deseret Letter. "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 447 (1987).

## CONCLUSION

The Court should grant Plaintiffs' Motion for Summary Judgment.

Dated: August 29, 2022                                  Respectfully Submitted,

                                                        */s/ Samuel Levin*
                                                        Samuel Levin (admitted *pro hac vice*)

15

        Thomas Roberts (admitted *pro hac vice*)
        Kevin Walsh (admitted *pro hac vice*)
        GROOM LAW GROUP, CHARTERED
        1701 Pennsylvania Ave., N.W.
        Washington, D.C. 20006
        (202) 857-0620
        slevin@groom.com
        troberts@groom.com
        kwalsh@groom.com

        *Counsel for Amicus Curiae American Council of Life Insurers*